United States District Court
Eastern District of New York

------------------------------------X

United States,

   - against -                           **Memorandum and Order**

Imran Ismile Badoolah,             No. 12-cr-774 (KAM)

        Defendant.

------------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

Before the Court is Defendant Imran Ismile Badoolah's second motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). (ECF No. 220, "Def. Mot."; ECF No. 222, "Def. Reply"; ECF No. 223, "Def. Supp. Mot.") The government opposes Mr. Badoolah's motion. (ECF No. 221, "Govt. Opp.") The United States Probation Department ("Probation") does not oppose the motion. (ECF No. 221, Govt. Opp. at 1.) For the reasons set forth below, having considered the parties' filings, the factual record, applicable law, and the factors set forth in 18 U.S.C. § 3553(a), Mr. Badoolah's motion for early termination of his supervised release is respectfully DENIED.

**BACKGROUND**

**I.   Underlying Offense**

On November 20, 2014, Mr. Badoolah pleaded guilty to one count of conspiracy to commit bank and wire fraud in connection to a "multi-year mortgage fraud scheme." (ECF No. 221, Govt. Opp. at

1[1].) Prior to sentencing, this Court conducted a *Fatico* hearing and determined the government had demonstrated by a preponderance of the evidence that Mr. Badoolah's involvement in a scheme to secure fraudulent mortgage loans associated with at least six properties resulted in a total loss amount of $999,721. (ECF No. 150, Sentencing Tr. at 8-12.) The Court further found that the testimony and evidence presented at the *Fatico* hearing demonstrated by a preponderance of the evidence that Mr. Badoolah "was involved in the fraudulent scheme involving the properties at issue" and had a "managerial or supervisory role" in the scheme. (ECF No. 150, Sentencing Tr. at 12-14.)

On January 25, 2017, this Court sentenced Mr. Badoolah to 30 months in custody, followed by a 5-year term of supervised release. (ECF No. 221, Govt. Opp. at 1; ECF No. 150, Sentencing Tr. at 40-41.) At sentencing, the Court advised Mr. Badoolah that it had imposed a below guidelines "sentence based on [his] need to pay restitution" and expressed the hope that "[he] takes very seriously his obligation to compensate his victims for their losses which will be . . . conditioned under supervised release." (ECF No. 150, Sentencing Tr. at 40-41.) The Court ordered Mr. Badoolah to pay mandatory restitution of $449,721, with $184,721 payable to HSBC Bank for losses associated with the property located at 115-

---

[1] Unless otherwise noted, all pin citations to the record refer to the page numbers provided by the Court's CM/ECF system.

2

03 168th Street and $265,000 payable to Freddie Mac for losses associated with the property located at 117-19 164th Street. (ECF No. 120, Sentencing Tr. at 44-45.) The Court also entered an Order of Forfeiture in the amount of $237,170.05. (ECF No. 150, Sentencing Tr. at 45.)

Mr. Badoolah's supervised release commenced on May 17, 2019 and, on March 19, 2020, Probation filed a Violation of Supervised Release ("VOSR") Report charging Mr. Badoolah with (1) failing to disclose the location of the proceeds of the underlying offense (Charge One); (2) opening a new line of credit without permission from the Court or Probation (Charge Two); and (3) failing to disclose financial records to Probation (Charge Three). (ECF No. 138, VOSR Rep. at 1, 5-8.) Mr. Badoolah pleaded guilty to Charge Two and the Court found Mr. Badoolah in violation of his conditions of supervised release as to Charge One. (ECF No. 219, VOSR Sentencing Tr. at 314; ECF No. 205, VOSR Judgment.)

On November 18, 2022, at sentencing for the violations, the Court again acknowledged that it had previously given Mr. Badoolah a below guideline sentencing with an expectation of "having [Mr. Badoolah] participate in compensating [his] victims and showing true remorse by participating" particularly where, as here, "time is of the essence" in determining where the proceeds of the fraudulent scheme were located. (ECF No. 219, VOSR Sentencing Tr. at 14-15.) The Court revoked Mr. Badoolah's supervised release

3

and sentenced him to one month in custody followed by three years, six months, and 25 days of supervised release. (ECF No. 224, Prob. Rep. at 1[2].) On July 19, 2023, the Court transferred Mr. Badoolah's supervision to the Middle District of Florida. (ECF. 224, Prob. Rep. at 2.) Mr. Badoolah's supervision is scheduled to end on October 1, 2026.[3] (ECF No. 224, Prob. Rep. at 1; ECF No. 221, Govt. Opp. at 2.)

## II. Personal Circumstances

Mr. Badoolah currently lives with his elderly mother and son in Haines City, Florida. (ECF No. 224, Prob. Rep. at 1-2.) For the entirety of his supervision in the Middle District of Florida, Mr. Badoolah has been unemployed. (ECF No. 224, Prob. Rep. at 2.) Mr. Badoolah reports that he is the primary caretaker for his mother, which has prevented him from seeking full-time employment. (ECF No. 224, Prob. Rep. at 2; ECF No. 223, Def. Supp. Mot. at 1-2.) His daughter currently pays him $200 per month to babysit her children and take them to and from school and doctors' appointments while she is at work. (ECF No. 224, Prob. Rep. at 2; ECF No. 223, Def. Supp. Mot. at 2; ECF No. 223-3, Letter dated Aug. 13, 2025.)

---

[2] Because ECF No. 224 was filed under seal and is not available on the Court's CM/ECF system, all pin citations to ECF No. 224 refer to the page numbers of the document.

[3] Mr. Badoolah erroneously states, without support, that his term of supervised release is set to expire on June 12, 2026. (ECF No. 220, Def. Mot. at 2.)

4

Mr. Badoolah reports that he has sought employment as a "paid long term care service specialist through a county funded program," which would permit him to be paid for caring for his mother. (ECF No. 223, Def. Supp. Mot. at 2.) Mr. Badoolah's application for this work program has been pending since December 4, 2024. (ECF No. 223, Def. Supp. Mot. at 2; ECF No. 223-4, Emails dated Dec. 4, 2024.)

### III. History of Restitution Payments

On August 26, 2025, Probation submitted a report regarding Mr. Badoolah's restitution payments to date and his efforts to secure employment. (*See* ECF No. 224, Prob. Rep.) Mr. Badoolah has paid a total of $25,897.20 towards his restitution, and has a current principal balance of $423,382.77[4]. (ECF No. 224, Prob. Rep. at 2.) In 2024, Mr. Badoolah paid $100 per month towards his restitution, and, in 2025, Mr. Badoolah has paid $200 per month to date. (ECF No. 224, Prob. Rep. at 2.)

On August 18, 2025, Mr. Badoolah submitted an updated financial disclosure statement to Probation that describes his current occupation as "babysitter, transporting grandchildren, [and] taking care of mother." (ECF No. 224, Fin. Disc. Stmt. at

---

[4] Probation's report states Mr. Badoolah has a current principal balance of $432,382.77. (ECF No. 224, Prob. Rep. at 2.) At sentencing, the Court ordered restitution in the amount of $449,721 and the parties are in agreement that Mr. Badoolah has paid $25,897.20 towards his restitution to date. (ECF No. 224, Prob. Rep. at 2; ECF No. 221, Govt. Opp. at 2; ECF No. 223, Def. Supp. Mot. at 2.) Accordingly, the Court calculates Mr. Badoolah's outstanding principal on his restitution obligation as $423,382.77. (*See also* ECF No. 221, Govt. Opp. at 2.)

5

2.)  Mr. Badoolah's monthly income is listed as $200, and he receives $291 in government assistance through food stamps. (ECF No. 224, Fin. Disc. Stmt. at 8.)

## LEGAL STANDARD

A district court may "terminate a term of supervised release . . . at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The court may only do so after considering certain 18 U.S.C. § 3553(a) sentencing factors, including "the need to provide restitution to any victims of the offense." *See* 18 U.S.C. § 3583(e); 18 U.S.C. § 3553(a)(7). A district court "is not required to discuss each and every sentencing factor in exercising its discretion." *United States v. Torres*, No. 21-cr-2511, 2022 WL 17087048, at *3 (2d Cir. 2022) (citing *United States v. Christie*, 736 F.3d 191, 196 (2d Cir. 2013)). "A statement that the district court has considered the statutory factors is sufficient." *United States v. Gammarano,* 321 F.3d 311, 315-16 (2d Cir. 2003) (internal quotation marks and citation omitted) (alteration accepted).

"Courts do not order early termination of supervised release as a matter of course." *United States v. Stein*, No. 09-CR-377 (RPK), 2020 WL 4059472, at *2 (E.D.N.Y. July 19, 2020) (internal quotations omitted); *see also United States v. Bastien*, 111 F.

6

Supp. 3d 315, 321 (E.D.N.Y. 2015) (same). Rather, early termination "is a discretionary decision made by the district court." *United States v. Sheckley*, No. 96-cr-1786, 1997 WL 701370, at *1 (2d Cir. Nov. 10, 1997) (Summary Order). "[S]uch relief may occasionally be justified by new or unforeseen circumstances, such as when exceptionally good behavior by the defendant renders a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of Section 3553(a)." *Stein*, 2020 WL 4059472, at *2 (internal quotation marks omitted) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

## **DISCUSSION**

Mr. Badoolah argues first that the Court should apply the forthcoming amendments to the United States Sentencing Guidelines (the "Guidelines") to evaluate his motion for early termination of supervised release. (ECF No. 220, Def. Mot. at 2-5.) Applying the forthcoming amendments, Mr. Badoolah argues that the Court should terminate his term of supervised release because he has complied with the terms of his supervision and his "unique circumstances" make termination in the "interests of justice." (ECF No. 220, Def. Mot. at 5-8.) The government opposes Mr. Badoolah's motion, arguing that the Court should not apply the forthcoming amendments to the Guidelines to Mr. Badoolah's motion because they are not yet in effect and, even assuming *arguendo* the

7

Court did apply the forthcoming amendments, "an individualized assessment of the need for ongoing supervision militates against early termination." (ECF No. 221, Got. Opp. at 2-3.)

As an initial matter, Mr. Badoolah has cited to no compelling legal authority,[5] and indeed this Court has found none, in support of his argument that the Court should apply forthcoming amendments to the Guidelines, which will not be in effect until *after* Mr. Badoolah's term of supervision expires, to the instant motion. Moreover, the Guidelines instruct that a court "*shall* use the Guidelines Manual in effect on the date that the defendant is sentenced" unless doing so would violate the *ex post facto* clause of the United States Constitution. U.S.S.G. § 1B1.11(a), (b)(1) (emphasis added). Accordingly, the Court will consider only the Guidelines in effect as of the date of this Order.

### I.   Mr. Badoolah's Outstanding Restitution Obligation

The Court has considered all of the relevant sentencing factors set forth in 18 U.S.C. § 3553(a) and finds that Mr. Badoolah's significant outstanding restitution balance weighs heavily against early termination. 18 U.S.C. § 3553(a)(7). At

---

[5] Mr. Badoolah cites only to *Rodriguez-Alonso v. United States* in support of his argument that the Court should apply forthcoming Amendments to the instant motion. 807 F. Supp. 21 (E.D.N.Y. 1992). In *Rodriguez-Alonso*, however, the court granted defendant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) and considered whether to retroactively apply an amendment to the Guidelines in place at the time of defendant's motion and the court's order that was not in place at the time of defendant's sentencing. *Id.* at 21-23. Accordingly the facts and procedural posture of *Rodriguez-Alonso* are entirely inapposite to the question of whether this Court should apply a *future* amendment to the Guidelines that is not in effect at the time of defendant's motion.

8

Mr. Badoolah's sentencing on January 25, 2017, the Court emphasized that it had imposed a below guidelines "sentence based on [Mr. Badoolah's] need to pay restitution." (ECF No. 150, Sentencing Tr. at 40-41.) Thereafter, at Mr. Badoolah's sentencing for his violations of supervision, the Court noted that leniency had not yielded greater recoveries, as the Court anticipated in imposing a below guidelines sentence, because Mr. Badoolah had refused to pay his restitution obligation until Probation "wrote memo after memo advising that he had been very reluctant" to make payments. (ECF No. 219, VOSR Sentencing Tr. at 15.) The Court recognizes that Mr. Badoolah has, over the last two years, made modest monthly payments towards his restitution and that he has paid a total of $25,897.20 to date. (ECF No. 224, Prob. Rep. at 2.) Nevertheless, these payments amount to only approximately 5.75% of Mr. Badoolah's total restitution obligation and he has a significant remaining balance of $423,382.77 that has not been repaid to his victims. (*Id.*)

Mr. Badoolah has not made any showing that early termination would allow him to seek a higher paying job that would allow him to increase the pace and amount of his restitution payments, nor has he demonstrated that he has sought employment beyond caring for his family members. *See United States v. Rosario*, No. 17-c-27 (LTS), 2023 WL 7305260, at *3 n.2 (S.D.N.Y. Nov. 6, 2023) (denying motion for early termination even where defendant

represented early termination would allow him to seek a higher paying job and increase his restitution payments). Instead, Mr. Badoolah appears to be seeking early termination primarily so that he may travel to Saudi Arabia, a country with no extradition treaty, to visit his family, arguing his "supervised release is serving as punishment because it deprives him of the ability to see his youngest two children." (ECF No. 220, Def. Mot. at 7.) He does not, however, disclose how he will fund his international travel.

Mr. Badoolah points to *United States v. Mabry* in support of his argument that the purpose of supervised release has been fulfilled in this case and is now serving as a punishment. 528 F. Supp. 3d 349 (E.D. Pa. 2021) (granting early termination over the government's objection where defendant had maintained steady employment, maintained his sobriety, and had no outstanding restitution obligation). Critically, though, in *Mabry*, "neither restitution nor a fine were required at the time of sentencing" and defendant had satisfied his only financial obligation of a $100 special assessment. *Id.* at 357-58. Moreover, although the Court is sympathetic to Mr. Badoolah's desire to spend time with children, the Court has repeatedly denied Mr. Badoolah's motions to travel to Saudi Arabia and other international destinations due to his significant restitution obligations. (*See, e.g.* ECF Dkt. Order dated Aug. 3, 2023; *see also* ECF Dkt. Order dated July 17,

10

2019; ECF Dkt. Order dated Nov. 28, 2023.)

Accordingly, although it is well settled that "the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them," *Mabry*, 528 F. Supp. 3d at 353, the Court has not identified any "new or unforeseen circumstances" that render the "previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997). Thus, in light of the ongoing "need to provide restitution to [the] victims of the offense," the Court finds that the "interests of justice" would not be served by early termination. 18 U.S.C. § 3553(a)(7); 18 U.S.C. § 3583(e)(1).

**II. Mr. Badoolah's Past Failure to Comply with the Terms of his Supervision**

Mr. Badoolah also argues that his law-abiding conduct while under supervision weighs in favor of early termination. (ECF No. 220, Def. Mot. at 5-6.) The Court recognizes that, in recent years, Mr. Badoolah has made monthly restitution payments and taken steps to comply with the conditions of his supervision. (*See* ECF No. 223, Def. Supp. Mot.) His prior violations and history of non-compliance, however, weigh against early termination.

As set forth above, in March 2020, Probation filed a VOSR Report charging Mr. Badoolah with (1) failing to disclose the

11

location of the proceeds of the underlying offense (Charge One); (2) opening a new line of credit without permission from the Court or Probation (Charge Two); and (3) failing to disclose financial records to Probation (Charge Three).  (ECF No. 138, VOSR Rep. at 1, 5-8.)  Mr. Badoolah pleaded guilty to Charge Two and the Court found Mr. Badoolah in violation of his conditions of supervised release as set forth in Charge One.  (ECF No. 219, VOSR Sentencing Tr. at 314; ECF No. 205, VOSR Judgment.)  Moreover, although a standard condition of Mr. Badoolah's supervised release is that he shall work full time or endeavor to find full-time employment, Mr. Badoolah has been unemployed for the entirety of his supervision in the Middle District of Florida, which has impacted his ability to make restitution payments.  (ECF No. 221, Govt. Opp. at 2; ECF No. 224, Prob. Rep. at 1.)

Mr. Badoolah attributes his inability to obtain steady employment in part to his "inability to produce proof of citizenship" because his expired passport is being held by Probation, and he cannot afford to obtain a new naturalization certification.  (ECF No. 220, Def. Mot. at 5 n.6.)  He argues that "if his supervision was terminated, he could reclaim his U.S. passport . . . and, upon getting it renewed, utilize it to prove his citizenship and hopefully become employed."  (*Id.*)  Despite these assertions, Mr. Badoolah has not made any recent applications to the Court to take temporary possession of his passport so that

12

he may seek employment, which the Court has previously granted. For example, on April 10, 2019, the Court granted Mr. Badoolah's request to take temporary possession of his passport solely for job interview purposes, and, on October 31, 2022, the Court granted Mr. Badoolah's request to take possession of his expired passport for the limited purpose of renewing it.  (ECF No. 125, Order dated Apr. 10, 2019; ECF Dkt. Order dated Oct. 31, 2022.)  Thus, Mr. Badoolah's claim that he has been unable to secure employment due to his expired passport being in the possession of Probation strains credulity.

Where, as here, there is a history of non-compliance with the terms of supervision, courts in this Circuit have regularly denied requests for early termination.  See e.g., *United States v. Heyward*, No. 15-cr-341 (LTS), 2021 WL 5889323, at *1 (S.D.N.Y. Dec. 13, 2021) (finding defendant's "progress in his personal and professional life [to be] commendable and encouraging," but denying early termination as defendant had previously violated the terms of his supervision); *United States v. Solano*, No. 19-cr-17 (PKC), 2023 WL 4599937, at *3 (E.D.N.Y. July 18, 2023) (denying early termination where defendant had made progress, but had a history of non-compliance with the terms of supervision); *United States v. Parker*, No. 21-cr-341 (MKB), 2025 WL 1635971, at *4 (E.D.N.Y. June 9, 2025) (finding early termination was not warranted where Defendant had previously violated the terms of his

13

release, resulting in multiple VOSR hearings).

Indeed, courts in this circuit have repeatedly denied motions for early termination even where defendants are in full compliance with the terms of probation or supervised release, because "such conduct does not amount to 'exceptionally good behavior' as to render the conditions of their supervised release 'too harsh or inappropriately tailored to . . . the general punishment goals of [18 U.S.C. §] 3553(a).'" *Parker*, 2025 WL 1635971, at *4 (quoting *Lussier*, 104 F.3d at 36); *United States v. Wheeler*, No. 20-cr-492 (GHW), 2025 WL 1295610, at *1 (S.D.N.Y. May 5, 2025) (denying early termination of supervised release because "successful compliance with the conditions of [Defendant's] supervised release to date" are "what is expected of a person under . . . supervised release and does not warrant early termination") (quoting *United States v. Fenza*, No. 03-cr-0921 (ADS), 2013 WL 3990914, at *2 (E.D.N.Y. Aug. 2, 2013)).

The Court recognizes that Mr. Badoolah's recent "progress during his current term of supervised release is a positive indicator of rehabilitation and decreased risk of recidivism." *United States v. Fleming*, No. 18-cr-00197 (KAM), 2025 WL 1262484, at *2 (E.D.N.Y. May 1, 2025). Nevertheless, the Court finds that in light of Mr. Badoolah's significant outstanding restitution obligation, his failure to secure full time employment, and his previous violations of supervised release, both Mr. Badoolah and

14

the community "will benefit from [(and not be unduly burdened by)] the continued supervision and support afforded to him by the Probation [Department] in navigating life post-incarceration" at this time. *Heyward*, 2021 WL 5889323, at *2.

## CONCLUSION

For the reasons set forth above, Mr. Badoolah's motion for early termination of his supervised release is respectfully DENIED. The Court will consider a renewed motion for early termination of supervised release or motion to travel should Mr. Badoolah satisfy his restitution obligation or reduce the balance below $40,000. The Court encourages Mr. Badoolah to seek full time employment so that he may meet his restitution obligations. Should Mr. Badoolah require the use of his passport for the limited purpose of seeking employment, he may make an application to take temporary possession of his passport to the Court through his counsel.

**So ordered.**

Dated:    September 29, 2025
         Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York