United States District Court
Eastern District of New York

-----------------------------------X

United States,

   - against -                        **Memorandum & Order**

Imran Ismile Badoolah a/k/a Sultan   12-cr-774 (KAM)
Badoolah,

              Defendant.

-----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

Before the Court is Defendant Imran Ismile Badoolah's third motion for early termination of supervised release pursuant to 18 U.S.C § 3583(e)(1), and in the alternative, to transfer his passport from the Eastern District of New York to the Middle District of Florida Probation Department for employment opportunities and return upon the end of Mr. Badoolah's supervised release. (ECF No. 226, "Third Mot." or the "Third Motion.")  The Government opposes Mr. Badoolah's Third Motion for early termination but does not object to Mr. Badoolah's request to access his passport, subject to counsel supervision, to facilitate the search for gainful employment. (ECF No. 229, "Opp." at 4 n.2.) The United States Probation Department ("Probation") does not oppose the Third Motion.  For the reasons set forth below, Mr. Badoolah's Third Motion for early termination of his supervised release is respectfully DENIED.  Mr. Badoolah's motion, in the alternative,

to transfer his passport from the Eastern District of New York to the Middle District of Florida Probation Department for use for employment opportunities is GRANTED, provided that Probation maintains custody of Mr. Badoolah's passport when it is not needed for a specific employment opportunity.

## BACKGROUND

The Court assumes familiarity with the background of the case as more fully set forth in the Court's September 29, 2025 decision on Mr. Badoolah's Second Motion for Early Termination of Probation/Supervised Release, (ECF No. 220, "Second Mot."). (*See* ECF No. 225, "Second Mot. Order.")

On January 25, 2017, this Court sentenced Mr. Badoolah to 30 months in custody, followed by a 5-year term of supervised release for a mortgage fraud scheme. (Opp. at 1; ECF No. 150, "Sentencing Tr." at 40-41.) At sentencing, the Court advised Mr. Badoolah that it had imposed a below Guidelines "sentence based on the need to pay restitution" and stated its expectation that "Mr. Badoolah takes very seriously his obligation to compensate his victims for their losses which will be . . . conditioned under supervised release." (Sentencing Tr. at 40-41.) The Court ordered Mr. Badoolah to pay mandatory restitution of $449,721, with $184,721 payable to HSBC Bank for losses associated with the property located at 115-03 168th Street, and $265,000 payable to Freddie Mac for losses associated with the property located at 117-19 164th

2

Street. (ECF No. 107, "Original Judgment," at 5; Sentencing Tr. at 44-45.) The Court also entered an Order of Forfeiture in the amount of $237,170.05. (Original Judgment at 5; Sentencing Tr. at 45.)

Following his initial custodial sentence, Mr. Badoolah's supervised release commenced on May 17, 2019. (ECF No. 138, "VOSR Rep." at 1.) On March 24, 2020, Probation filed a Violation of Supervised Release ("VOSR") Report charging Mr. Badoolah with three charges. (VOSR Rep. at 1, 5-8.) Mr. Badoolah pleaded guilty to Charge Two, Unauthorized Opening of a New Line of Credit without Permission from the Court or Probation Department. (ECF No. 146, Minute Entry dated Nov. 20, 2020.) The Court subsequently found that under Charge One, Mr. Badoolah's failure to disclose proceeds from the original offense conduct was a violation of supervised release. (ECF No. 164.) On August 16, 2022, Mr. Badoolah filed his first motion for early termination of probation/supervised release, (ECF No. 194), which was subsequently denied, (Minute Entry dated Sep. 20, 2022.)

On November 18, 2022, the Court revoked Mr. Badoolah's supervised release and sentenced him to one month in custody and "[u]pon release from imprisonment," a 1302-day term of supervised release. (ECF No. 204, "VOSR Judgment" at 1.)[1] The Court

---

[1] Charge Three was dismissed on motion of the Government. (VOSR Judgment at 2.)

reiterated that it had previously given Mr. Badoolah a below Guidelines sentence at his initial sentencing with the expectation that Mr. Badoolah would "participate in compensating [his] victims and show[] true remorse by participating," particularly where, as here, "time is of the essence" in determining where the proceeds of the fraudulent scheme were located. (ECF No. 219, "VOSR Sent'g Tr." at 14-15.)

On July 21, 2025, Mr. Badoolah made his second motion for early termination of probation/supervised release.  (*See generally* Second Mot.)  Upon consideration of the parties' filings, the factual record, applicable law, and the factors set forth in 18 U.S.C. § 3553(a), the Court denied Mr. Badoolah's Second Motion for early termination on September 29, 2025, because, *inter alia*: (1) Mr. Badoolah's significant restitution obligation weighed heavily against early termination; (2) Mr. Badoolah's prior violations and history of non-compliance weighed against early termination; and (3) the Court would not consider a future November 2025 Guidelines amendment that was not in effect at the time of a defendant's motion.  (*See generally* Second Mot. Order.)[2]

---

[2] Mr. Badoolah's Third Motion could be considered, in substance, to be an untimely motion for reconsideration of this Court's September 29, 2025 Memorandum and Order denying Mr. Badoolah's Second Motion.  (*See* Second Mot. Order.)  A motion for reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *United States v. Bishop*, No. 16-CR-00494

On December 4, 2025, Mr. Badoolah made this instant Third Motion for early termination of probation/supervised release arguing that "there should be no question that [the § 5D1.4 Guidelines] amendments are in effect currently." (Third Mot. at 1.) On December 10, 2025, Probation filed a supervision report as to Mr. Badoolah in response to his Third Motion for early termination. (ECF No. 228.) On December 17, 2025, the Government filed its opposition. On December 20, 2025, Mr. Badoolah's filed his reply. (ECF No. 230, the "Rep.")

On February 26, 2026, the Court ordered the Government "to consult with the victim financial institutions to whom Mr. Badoolah still owes restitution regarding Mr. Badoolah's request to terminate his supervised release" pursuant to the recommendation in *U.S. Sent'g Guidelines Manual* (the "Guidelines") § 5D1.4 cmt. n.2 (U.S. Sent'g Comm'n 2025). On March 6, 2026, the Government represented that victim Freddie Mac opposed Mr. Badoolah's request for early termination, and victim HSBC took no position on the request. (ECF No. 231 at 1.) The Government also stated that as of March 6, 2026, Mr. Badoolah owed $431,970.75 in restitution.

---

(JMA) (GXB), 2025 WL 2576503, at *2 (E.D.N.Y. Sept. 5, 2025) (citation modified). Because the November 2025 Sentencing Guidelines are now in effect, the Court will not construe the Third Motion as a motion for reconsideration, but the Court will not, moving forward, consider any additional motion for early termination until, as previously stated, Mr. Badoolah has paid down his restitution to $40,000.

5

On March 17, 2026, the Court directed the Government to clarify how much Mr. Badoolah owed in restitution because the Government and Probation had previously stated that Mr. Badoolah owed $423,123.80 in December 2025.  (Dkt. Order dated Mar. 17, 2026.) On March 25, 2026, the Government reported that the Government and Probation's prior December 2025 report of $423,123.80 in outstanding restitution did not reflect the interest that had accumulated and "simply reflected the principal of the debt owed minus the payments made by the Defendant as of that date." (ECF No. 232 at 1-2.) As of March 25, 2026, Mr. Badoolah thus owed $431,761.51 in outstanding restitution inclusive of interest. (ECF No. 232 at 2.)

## LEGAL STANDARD

A district court may "terminate a term of supervised release . . . at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The Court may only terminate supervised release after considering certain § 3553(a) sentencing factors, including "the need to provide restitution to any victims of the offense." *See* 18 U.S.C. §§ 3583(e), 3553(a)(7).  A district court "is not required to discuss each and every sentencing factor in exercising its discretion." *United States v. Torres*, No. 21-cr-2511, 2022 WL 17087048, at *3 (2d Cir. 2022) (citing *United States*

6

*v. Christie*, 736 F.3d 191, 196 (2d Cir. 2013)). "A statement that the district court has considered the statutory factors is sufficient." *United States v. Gammarano*, 321 F.3d 311, 315-16 (2d Cir. 2003) (citation modified). The Court must make an "individualized assessment of the need for ongoing supervision" under the updated November 2025 Sentencing Guidelines § 5D1.4(b).

One Section 3553(a) factor directs the Court to consider "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). In the updated November 2025 Sentencing Guidelines, the Sentencing Commission issued a policy statement outlining a non-exhaustive list of factors that sentencing courts "may wish to consider":

(i) any history of court-reported violations over the term of supervision;

(ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

(iii) the defendant's substantial compliance with all conditions of supervision;

(iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

(v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision;

(vi) and whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's

7

> efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

Guidelines § 5D1.4, comment. n.1(B), the "§ 5D1.4 Factor(s)."

"Courts do not order early termination of supervised release as a matter of course." *United States v. Stein*, No. 09-CR-377 (RPK), 2020 WL 4059472, at *2 (E.D.N.Y. July 19, 2020) (citation modified); *see also United States v. Bastien*, 111 F. Supp. 3d 315, 321 (E.D.N.Y. 2015) (same). Rather, early termination "is a discretionary decision made by the district court." *United States v. Sheckley*, No. 96-cr-1786, 1997 WL 701370, at *1 (2d Cir. Nov. 10, 1997) (summary order). "[S]uch relief may 'occasionally' be justified by 'new or unforeseen circumstances,' such as when 'exceptionally good behavior by the defendant . . . render[s] a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of Section 3553(a).'" *Stein*, 2020 WL 4059472, at *2 (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

### **DISCUSSION**

Mr. Badoolah argues that the Guidelines § 5D1.4 Factors weigh in favor of early termination because Mr. Badoolah has no violations on his current term of supervision, is able to lawfully self-manage, is not a risk to public safety, and because continued supervision is punitive and not rehabilitative. (Third Mot. at 3-

8.)   The Government opposes based on Mr. Badoolah's significant outstanding restitution balance and because Mr. Badoolah's care for his elderly mother, while "laudable," does not excuse Mr. Badoolah from his restitution obligations.  (Opp. at 3-4.)   In reply, Mr. Badoolah argues that the Guidelines § 5D1.4 Factors control, have been met, and supervised release is now serving a punitive not rehabilitative purpose. (Rep. 1-2.)

Mr. Badoolah advances no arguments warranting a departure from the Court's prior denials of early termination.  (*See* Minute Entry dated Sep. 20, 2022; Second Mot. Order.)  As of March 25, 2026, Mr. Badoolah still has an outstanding restitution obligation of $431,761.51.  Having considered the parties' filings, the factual record, applicable law, an individualized assessment of Mr. Badoolah's need for ongoing supervision, the Sentencing Commission's newly promulgated policy statement setting forth the discretionary § 5D1.4 Factors, and the factors set forth in 18 U.S.C § 3553(a), the Court concludes that continued supervision is appropriate.

## I.    Mr. Badoolah's Significant Restitution Obligation

As this Court previously made plain, Mr. Badoolah's significant outstanding restitution obligation of over $400,000 heavily weighs against early termination.  (Second Mot. Order at 8-11.) Section 3583(e)(1)'s early termination provision is clear: the Court may only grant early termination after considering, "the

9

need to provide restitution to any victims of the offense." 18 U.S.C. 3553(a)(7). Even the newly updated Guidelines § 5D1.4, which Mr. Badoolah heavily relies on, explicitly states that an outstanding restitution obligation is an important consideration:

> **Notification of Victims**.—When determining whether to modify any condition of supervised release that would be relevant to a victim or to terminate the remaining term of supervised release, the Commission encourages the court, in coordination with the government, to ensure that any victim of the offense is reasonably, accurately, and timely notified, and provided, to the extent practicable, with an opportunity to be reasonably heard, unless any such victim previously requested not to be notified.

§ 5D1.4 comment n.2. Of Mr. Badoolah's original $449,721 restitution obligation, $265,000 was payable to Freddie Mac, and $184,721 is payable to HSBC Bank as victims. (Original Judgment at 5.) Here, Freddie Mac has opposed Mr. Badoolah's Third Motion for early termination and HSBC takes no position. (ECF No. 231.) As of December 17, 2025, Mr. Badoolah had paid only $26,697.20, or around 6% of his original restitution obligation. (ECF No. 228 at 1.) Although Mr. Badoolah "has consistently been making $200.00 monthly payments since December of 2024," (ECF No. 231 at 1), Mr. Badoolah still owes $431,761.51 in outstanding restitution, inclusive of interest, (ECF No. 232 at 2.)

Mr. Badoolah's reliance on *United States v. Mabry*, 528 F. Supp. 3d 349 (E.D. Pa. 2021) and *United States v. Harris*, 689 F. Supp. 2d 692 (S.D.N.Y. 2010) to argue that early termination is

10

still warranted is misplaced.  (Third Mot. 7-8.)  As this Court previously stated, *Mabry* is inapt because "[n]either restitution nor a fine were required at the time of sentencing" and Mabry had satisfied his only financial obligation of a $100 special assessment when the *Mabry* court granted early termination.  *Mabry*, 528 F. Supp. 3d at 352; (*see also* Second Mot. Order at 10.)

Although the *Harris* court granted early termination notwithstanding Mr. Harris' outstanding restitution obligation, the factual circumstances in *Harris* do not exist here.  689 F. Supp. 2d at 695-96.  In *Harris*, the court found that Harris was unlikely to meaningfully redress the victim banks' $200 million loss and that the "only practical consequence of continuing supervision" was to "cripple Harris's efforts to achieve full rehabilitation through professional advancement."  *Id.* at 695. The court held that Mr. Harris "demonstrate[d] convincingly that being on supervised release not only create[d] multi-faceted obstacles to his advancing in his company . . . but also places his employment at hazard in the present economic downturn."  *Id.* at 696.  Moreover, Harris's "term of imprisonment was lengthy," and there was "no need for further general deterrence." *Id.* at 696.  There were thus "changed circumstances" which made "the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve general punishment goals.'"  *Id.* at 694 (quoting *Lussier*, 104 F.3d at 35).

11

Unlike in *Harris*, Mr. Badoolah has not shown any "new or unforeseen circumstances" that render the "previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *Lussier*, 104 F.3d at 36. Mr. Badoolah has not made any showing of how supervised release is precluding his advancement in a job because Mr. Badoolah is not employed and has chosen to care for his elderly mother, rather than seek gainful employment. *See Harris*, 689 F. Supp. 2d at 695.[3] The Court has also repeatedly emphasized that it imposed a below Guidelines custodial sentence for Mr. Badoolah because the Court was prioritizing restitution, (Sentencing Tr. at 40-41; VOSR Tr. at 51-52). There is thus no lengthy custodial sentence that offsets the "need for further general deterrence." *Harris*, 689 F. Supp. 2d at 696.

Mr. Badoolah argues that his inability to see his two children who live in Saudi Arabia show that his continued supervision is

---

[3] Mr. Badoolah argues that case precedent on motions for early termination of supervised release/probation that pre-dates the updated November 2025 Guidelines is inapposite because it is the § 5D1.4, comment. n.1(B) factors that govern. (Rep. at 1, 1 n.3 (critiquing the Government's reliance on pre-November 2025 case precedent and asserting that the factors "control[] the Court's decision").) Not so. The updated November 2025 Guidelines makes clear that the statutory basis for early termination is, and has always been, 18 U.S.C. § 3583(e)(1). Guidelines § 5D1.4(b). The § 5D1.4 Factors are discretionary factors the "court may wish to consider." Guidelines § 5D1.4, comment. n.1(B). Mr. Badoolah himself relies on case precedent that pre-dates the November 2025 Guidelines. (*See e.g.,* Third Mot. at 6-8.)

punitive.  (Third Mot. at 7.)   But as this Court has made clear, Mr. Badoolah has been free to find a job and/or pay down his restitution such that the Court would re-consider a motion to travel to Saudi Arabia, a non-extradition country, to visit his other children who reside there.  (*See e.g.*, ECF No. 225, Dkt. Order dated Nov. 28, 2023.)   Mr. Badoolah has chosen to make, at best, limited efforts to obtain employment or significantly pay down his restitution obligations, even before he chose to become his mother's primary caretaker.  (ECF No. 199 at 2-3.)

Mr. Badoolah's significant outstanding restitution obligations also heavily favor denying early termination because the Court recognizes that upon release, Mr. Badoolah's likely travel to Saudi Arabia would endanger his victims' restitution payments should he choose not to return to the United States. (*See* Opp. at 4.)

Accordingly, Mr. Badoolah has not satisfied his burden to convince this Court to revisit its prior analysis that Mr. Badoolah's significant restitution obligation weighs heavily against early termination.  In considering the 18 U.S.C. 3553(a) factors, and an individualized assessment of Mr. Badoolah's need for ongoing supervision, including the need to provide restitution to the victims, the Court finds that the "interests of justice" would not be served by early termination.

13

## II. Mr. Badoolah's Noncompliance with Supervised Release Conditions

Mr. Badoolah argues that early termination is warranted because the discretionary § 5D1.4(b) Factors, including "the "history of court-reported violations over the term of supervision" factor, weigh in his favor. *See* Guidelines § 5D1.4, comment. n.1(B)(i); (Third Mot. at 3-6.)   The Court commends Mr. Badoolah for acting as his elderly mother's primary caretaker and assisting with the childcare of his grandchildren.  (*Id.* at 1-2.)[4] These actions, though limited to family members show "prosocial activities" and the "existence . . . of prosocial support to remain lawful beyond the period of supervision."   Guidelines § 5D1.4, comment. n.1(B)(iv).  While on supervision in Florida, Mr. Badoolah has also been supervised at a "Low Moderate" level.  (ECF No. 228-1 at 2.) The Court also recognizes that since his VOSR sentencing in November 2022, Mr. Badoolah has made monthly restitution payments.  (*See* ECF No. 228-1 at 2, 231 at 1 n.1.)   But as stated

---

[4] Mr. Badoolah is not in compliance with the standard condition of supervision that requires Mr. Badoolah to work at least 30 hours per week unless the probation officer excuses Mr. Badoolah from doing so.  VOSR Judgment at 4.  Although Probation has not explicitly excused Mr. Badoolah from this condition, Probation has reported that it believes Mr. Badoolah has chosen to be the primary caretaker for his elderly mother which prevents him from obtaining full-time employment.  (ECF No. 228-1 at 2.) Probation does not provide further information regarding other resources for assistance with his mother's care, including his mother's own resources and social and elder care services, that would permit Mr. Badoolah to obtain employment.

14

in this Court's Second Motion Order, Mr. Badoolah's prior violations and history of non-compliance weighed against early termination, (Second Mot. Order at 11)—and they still do.

Mr. Badoolah argues that the Court should limit its focus to the time-period after his November 2022 VOSR during which no violations have been filed against Mr. Badoolah. (Third Mot. at 3-4.) But it is well-settled that when weighing a defendant's compliance with supervised release conditions, courts are not limited to the VOSR supervised release term. *See e.g.,* *United States v. Fleming*, No. 18-cr-00197 (KAM), 2025 WL 1262484 at *100 (E.D.N.Y. May 1, 2025) (finding a defendant's prior instance of criminal activity while on supervised release for a separate sentence weighed against early termination of supervised release); *United States v. Parker*, No. 21-cr-341 (MKB), 2025 WL 1635971, at *4 (E.D.N.Y. June 9, 2025) (finding early termination was not warranted where defendant had previously violated the terms of his release, resulting in multiple VOSR hearings). Barring the Court from considering Mr. Badoolah's history of violations before his November 2022 VOSR sentencing is untenable because each new VOSR term would in essence reset the time-period and the factual record for which the Court would consider violations. Mr. Badoolah also cites no case where a Court granted early termination of supervised release when a defendant had a history of violations of supervised release.

15

Courts in this Circuit routinely deny early termination, even in cases where individuals have complied with all conditions of supervised release, because compliance with all conditions "is what is expected of a person under supervised release." *United States v. Gonzalez*, No. 1:25-CR-483-GHW, 2025 WL 3274491, at *3 (S.D.N.Y. Nov. 25, 2025) (citing *United States v. Fenza*, No. 03-CR-0921 (ADS), 2013 WL 3990914, at *2 (E.D.N.Y. Aug. 2, 2013)); *United States* v. *Guerrero-Fajardo*, No. 23-cr-210 (JPC), 2024 WL 3925338, at *2 (S.D.N.Y. Aug. 23, 2024) ("[C]ompliance with release conditions does not, by itself, provide a basis for early termination of supervised release.").

Even if Mr. Badoolah has complied with the terms of his supervised release, this would, by itself, be insufficient because "simply complying with the terms of supervised release does not generally justify early termination." *United States v. Stacharczyk*, 1:15-cr-00142 (EAW), 2024 WL 797969 at *246 (W.D.N.Y. Feb. 27, 2024) (citation modified). Compliance with supervised release does not automatically constitute "exceptional circumstances" warranting early termination. *See United States v. Berrios*, No. 95-CR-84 (PKL), 2010 WL 1010022, at *2 (S.D.N.Y. Mar. 16, 2010) (denying defendant's motion for early termination of supervised release on the grounds that defendant's "continued compliance with her terms of supervision, good attitude, and positive work ethic" do not constitute an exceptional case); *United*

16

*States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("While [defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release, since if it were, the exception would swallow the rule.").

Accordingly, based on this "individualized assessment" of Mr. Badoolah's need for ongoing supervision, the Court again finds no reason to deviate from its previous finding that Mr. Badoolah's prior violations and history of non-compliance also weigh against early termination.

## III. Mr. Badoolah's Supervised Release Termination Date is September 24, 2026

Mr. Badoolah claims that the termination date for his supervised release is June 12, 2026.  (Third Mot. at 2 n.2.)  The Government submits that the termination date for Mr. Badoolah's supervised release is September 24, 2026. (Opp. at 2 n.1).  Mr. Badoolah argues that "the new [supervised release] term of 1302 days was imposed" the day of his November 18, 2022 VOSR sentencing, and Mr. Badoolah "remained under continuous supervision from that day forward except for the one month he served in prison," so "1302 days from November 18, 2022" results in a termination date of "June 12, 2026." (Third Mot. at 2 n.2.)[5]

---

[5] As an initial matter, Mr. Badoolah erroneously includes his one-month custodial sentence in his 1302-day term of supervised

But supervised release is, by definition, a form of *post-imprisonment* supervision. "When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release *after* imprisonment." 18 U.S.C. § 3583(h) (emphasis added). The VOSR Judgment accordingly states: "[u]pon release from imprisonment, defendant will be on supervised release for a term of: 1302 days." (VOSR Judgment at 3.)

At the November 18, 2022 VOSR Sentencing, the Court granted Mr. Badoolah's request for an over two-and-a-half month delay to surrender, to February 1, 2023. (VOSR Sent'g Tr. at 48-49.) Mr. Badoolah thus started serving his VOSR term of supervised release on March 2, 2023, and his supervised release will terminate 1302 days later on September 24, 2026.[6]

---

release. Mr. Badoolah cites no authority or case precedent in doing so because there is none. A defendant is not on supervised release while serving a custodial sentence.

[6] In reply, Mr. Badoolah appears to argue that the Court erroneously considered a sentencing factor in § 3553(a)(2)(A), "promot[ing] respect for the law" during Mr. Badoolah's VOSR sentencing on November 18, 2022. (Rep. at 2-3, Ex. A at 45.) The Supreme Court issued *Esteras v. United States*, which held that "[d]istrict courts cannot consider the retributive purpose articulated in § 3553(a)(2)(A) when revoking supervised release," after Mr. Badoolah's VOSR sentencing. 606 U.S. 185, 193 (2025). "Promot[ing] respect for the law," in addition to considerations of "the seriousness of the offense," and "provid[ing] just punishment for the offense," is one consideration listed under 18

Although Mr. Badoolah may consider it unfair that the two months between his VOSR sentencing and surrender do not count against his 1302-day supervised release term even though he remained on supervision during this period, the Court granted the surrender date delay at Mr. Badoolah's request. Moreover, in calculating the 1302-day supervised release term, the Court granted Mr. Badoolah multiple time credits it was not required to. (*See* VOSR Sent'g Tr. at 49-52.) In imposing a 1302-day term, the Court started the calculation with the five years of supervised release imposed as part of Mr. Badoolah's initial sentence. (*See id.* at 49-50.) The Court then deducted the 313 days Mr. Badoolah had served before his VOSR, even though the Court noted that "we don't usually give credit," but the Court did so because it was "hoping that [Mr. Badoolah] gets it now and will make restitution." (*Id.* at 51-52). The Court also deducted "the 30 days for the time"

---

U.S.C. § 3553(a)(2)(A). *Esteras* does not apply retroactively and has no bearing on this Court's current opinion. *See Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("[A] new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive." (citation modified)). Even assuming *arguendo* that *Esteras* does apply retroactively, the record shows that the Court is aligned with *Esteras*. The Court made clear that it made an individualized assessment and considered "the factors set forth in 3553(a), except for the punishment factor," in other words, § 3553(a)(2)(A), when revoking Mr. Badoolah's supervised release. (Rep., Ex. A at 42.) Any reference to "promot[ing] respect for the law" was intended to bear on anther § 3553(a) factor regarding "adequate deterrence" and not punishment. *See* 3553(a)(2)(A)-(B).

Mr. Badoolah would serve in custody for his VOSR "starting in February" 2023, when Mr. Badoolah surrendered. (*Id.* at 50). Upon the request of defense counsel, the Court also agreed to deduct 180 days for the time that passed during the resolution of Mr. Badoolah's VOSR charges. (*Id.* at 51.)[7]

Thus, the proper date of supervision expiration is September 24, 2026, 1302 days after Mr. Badoolah's release from his one month in custody.

### CONCLUSION

For the reasons set forth above, Mr. Badoolah's motion for early termination of his supervised release is respectfully DENIED. The Court will consider a renewed motion for early termination of supervised release or motion to travel should Mr. Badoolah satisfy his restitution obligation or reduce the balance below $40,000. Mr. Badoolah's motion, in the alternative, to transfer his passport from the Eastern District of New York to the Middle District of Florida Probation Department for use for employment opportunities and expeditious return upon the end of Mr. Badoolah's supervised release term is GRANTED, provided that Probation maintains custody of Mr. Badoolah's passport when it is

---

[7] The Court thus reached a supervised release term of 1302 days: (365 days/year x 5 years) = 1,825 days minus 313 days already served on supervised release = 1512 days – 30 days in custody for VOSR = 1482 days – 180 days = 1302 days.

not needed for a specific employment opportunity.

**So ordered.**

Dated:      April 17, 2026
            Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York